**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**ALEXANDER PINALES-FLORES,**

**Plaintiff,**

**v.**

**COMMONWEALTH OF PUERTO RICO; et al.,**

**Defendants.**

**Civil No. 25-1245 (ADC)**

**OPINION AND ORDER**

## I. Introduction

On May 2, 2025, plaintiff Alexander Pinales-Flores ("plaintiff") filed a complaint against defendants the *Autoridad Metropolitana de Autobuses* or Metropolitan Bus Authority ("MBA"), the Commonwealth of Puerto Rico's Department of Transportation and Public Works ("DTOP" in accordance with its Spanish-language acronym), and the Commonwealth itself (together with MBA and DTOP, "defendants") as the real party in interest. **ECF No. 1**.[1] Plaintiff brought forth allegations of race, color, national origin, and disability discrimination against defendants under several federal and Commonwealth statutes and laws. The heart of the complaint is the allegation that plaintiff, a public bus driver, was subjected to discriminatory workplace

[1] For ease of reference, the Court will refer to the *Autoridad Metropolitana de Autobuses* by its English acronym.

harassment by his supervisor, Luis López-Ortiz ("Mr. López"), and was retaliated against for filing an internal complaint.

On September 9 and 12, 2025, defendants filed two separate motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), both based on multiple grounds. **ECF Nos. 21, 22**. Plaintiff sought two lengthy extensions of time to file a response, but the final self-imposed deadline elapsed without plaintiff filing one. However, the very next day, on November 24, 2025, plaintiff moved to file an amended complaint to include additional factual allegations in response to one specific argument raised by the defendants in their motions. **ECF No. 28**. DTOP and the Commonwealth opposed the motion for leave to amend on grounds of futility and maintained that the motions to dismiss remain unopposed as to the arguments not affected by the amendment. **ECF No. 29**.

Having reviewed the motions on record, the Court **GRANTS** plaintiff's motion to amend the complaint and **DENIES AS MOOT** defendants' motions to dismiss.

## II. Procedural Background

On May 2, 2025, plaintiff filed a complaint against defendants. **ECF No. 1**. In the complaint, plaintiff included three principal causes of action. First, plaintiff claimed that defendants unlawfully retaliated against him for engaging in protected activity in violation of the following statutes and laws: (i) Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) ("Title VII"); (ii) Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); (iii) the American with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"); (iv) Puerto

Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. t. 29, § 194 *et seq.* ("Law 115"); and (v) Article II, Section 16 of the Constitution of the Commonwealth of Puerto Rico, P.R. Const., art. II, § 16. *Id.*, at ¶ 67. Second, plaintiff claimed that defendants' discriminatory conduct was based on his race, color, national origin, and disability and that it altered his employment conditions, creating a hostile work environment in violation of (i) Title VII; (ii) Section 1981; (iii) ADA; (iv) Puerto Rico's Law No. 100 of June 30, 1959, P.R. Laws Ann. t. 29, § 146 *et seq.* ("Law 100"); (v) Puerto Rico's Law No. 44 of July 2, 1985, P.R. Laws Ann. t. 1, § 501 *et seq.* ("Law 44"); and (vi) Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico, P.R. Const., art. II, § 1. *Id*. Third, plaintiff claimed that defendant's actions and omissions were the result of their fault or negligence and caused him damages, for which he is entitled to compensation under Puerto Rico's general tort statute. *Id.*, at ¶¶ 86-97.[2] Finally, plaintiff claimed to have suffered emotional damages, calculated his compensatory damages at $300,000, and requested that the Court order his reinstatement and forbid defendants from further discriminating against him. *Id.*, at ¶¶ 68-73, 82-84.[3]

On September 9, 2025, MBA filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. **ECF No. 21**. Specifically, MBA argued that (i) plaintiff failed to exhaust administrative remedies by not filing a timely charge before the Equal

---

[2] The other two causes of action concern the liability of unknown insurance company defendants, **ECF No. 1** at ¶¶ 98-99, and a claim for attorney's fees and costs, *id.*, at ¶¶ 100-103.

[3] Under the third cause of action, claiming damages for tort, plaintiff calculated his "compensatory and statutory damages" at $500,000. **ECF No. 1** at ¶ 92.

Employment Opportunity Commission ("EEOC"); (ii) the race and national origin discrimination claims lack factual specificity; and (iii) the allegations of retaliation and hostile work environment do not plausibly reveal a discriminatory intent behind an adverse employment action or causal connection to one, and do not reflect the level of severity or pervasiveness necessary for a viable hostile work environment claim. **ECF No. 21** at 2, 7-8.

On September 12, 2025, DTOP and the Commonwealth filed a separate motion to dismiss under Fed. R. Civ. P. 21(b)(1) for lack of subject-matter jurisdiction as well as under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. **ECF No. 22**. With regards to jurisdiction, they argued that the Commonwealth and DTOP, as an arm of the Commonwealth, both enjoy sovereign immunity under the Eleventh Amendment, U.S. Const. amend. XI, and therefore plaintiff's claims for damages under Commonwealth law, as well as those arising under Section 1981 and the ADA, should be dismissed. **ECF No. 22** at 5-8. As to the substance of plaintiff's claims, DTOP and the Commonwealth argued that plaintiff (i) failed to exhaust administrative remedies; (ii) failed to plausibly allege that a materially adverse employment action had taken place or that he was subjected to an objectively severe or pervasive pattern of harassment; and (iii) that the Court should decline to exercise supplemental jurisdiction over the Commonwealth law claims.

Plaintiff sought and obtained two extensions of time, totaling sixty-one days, to oppose the motions to dismiss. *See* **ECF Nos. 23, 25, 26, 27**. In granting the last request, the Court warned that "[n]o further extensions of time [would] be granted absent exigent circumstances." **ECF No. 27**. The last requested extension expired on November 23, 2025, with no opposition from

plaintiff. But on November 24, plaintiff filed a motion under Fed. R. Civ. P. 15(a)(2) requesting leave to file an amended complaint to include "additional factual allegations that would clarify that the Plaintiff timely filed a Charge of Discrimination before the Equal Employment Opportunity Commission ('EEOC')." **ECF No. 28** at 1. Plaintiff attached the proposed amended complaint as an exhibit. **ECF No. 28-1**. Promptly, on November 25, DTOP and the Commonwealth filed a response in opposition to the motion for leave to amend, highlighting plaintiff's failure to oppose the motions to dismiss and arguing that the proposed amendment would be futile. **ECF No. 29**.

## III. Legal Standard

A defendant may move to dismiss a complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Motions brought under Fed. R. Civ. P. 12(b)(1) are subject to the same standard of review as Fed. R. Civ. P. 12(b)(6) motions. *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 132 (D.P.R. 2007) (citing *Negrón-Gaztambide v. Hernández-Torres*, 35 F.3d 25, 27 (1st Cir. 1994)). Nevertheless, "[w]hen a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." *González v. Otero*, 172 F. Supp. 3d 477, 495 (D.P.R. 2016) (citing *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002)). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Id.*

When reviewing a complaint under Rule 12(b)(1), courts "construe the Complaint liberally and treat all well-pleaded facts as true, according to the plaintiff[s] the benefit of all

reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). Courts also favorably construe a complaint when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action" and they "must contain sufficient factual matter[s] to state a claim to relief that is plausible on its face." *Id*. (additional citations and internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the resulting factual allegations "are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*). In sum, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

As for requests for leave to amend a complaint, Fed. R. Civ. P. 15(a)(2) provides that they should be "freely give[n]… when justice so requires." But such leave may be denied "when the

request is characterized by undue delay, bad faith, futility, … the absence of due diligence… [or] if the proposed amendment would serve no useful purpose." *Calderón-Serra v. Wilminton Trust Co.*, 715 F.3d 14, 19 (1st Cir. 2013) (internal citations and quotation marks omitted). "A proposed amendment is futile if it is either frivolous or contains some fatal defect . . . . Normally, this means that 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 40 (1st Cir. 2022) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)) (some citations omitted). Accordingly, requests for leave to amend a complaint before discovery is completed and prior to the filing of a motion for summary judgment are reviewed for futility under the same standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013); *Glassman*, 90 F.3d at 623.

## IV. Discussion

### A. The well-pleaded facts.

In his original complaint, plaintiff alleged that he has been employed as a public bus driver for defendants since approximately December 2022. *Id.*, at ¶¶ 23, 26. He alleged that his race and color are Black, and that even though his national origin is Puerto Rican, his father's is Dominican. *Id.*, at ¶¶ 16-18. He further alleged to suffer from a disability that affects his eyesight, which requires him to use high-prescription eyeglasses to be able to see. *Id.*, at ¶¶ 19-22.

According to plaintiff, since approximately April or May 2023, his supervisor, Mr. López, has subjected him to a pattern of workplace harassment and discriminatory treatment based on

his race, color, national origin, and disability, with the purpose of forcing his involuntary resignation. *Id.*, at ¶ 1. He characterizes this conduct as "mockery" and provides three separate examples of this pattern. *Id.*, at ¶ 30. First, that Mr. López would "mock and humiliate" him by calling him "*Pinales caca*" in reference to his race and color. *Id.*, at ¶ 30.a. Second, that Mr. López would "mock and humiliate" him by calling him "Dominican" in reference to his national origin and "insinuating that plaintiff was dumb." *Id.*, at ¶ 30.b. Third, that Mr. López would "mock and humiliate" him by "questioning how [he] could be able to drive the bus because of his eyeglasses" in reference to his disability, "insinuating that the plaintiff's disability is a hazard for public transportation." *Id.*, at ¶ 30.c.

Plaintiff further alleged that "during the past two years" he has complained to Mr. López and requested that he cease and desist from further mocking and humiliating him, but that the conduct has continued and increased. *Id.*, at ¶¶ 31-34.[4] Plaintiff then verbally complained to defendants' human resources ("HR") office in April or May 2024, and later filed a written complaint in June 2024. *Id.*, at ¶¶ 35-36. Also in June, he alleges to have had a meeting with three officials in the HR office, who then dismissed his complaint, characterized Mr. López's conduct as "normal," and refused to take any corrective action. *Id.*, at ¶¶ 37-41. As a result, the pattern of mockery and humiliation got worse. *Id.*, at ¶ 42. This led to plaintiff filing of a Charge of Discrimination, No. 515-2025-00238, before the EEOC in March 2025, where he alleged

[4] Because plaintiff commenced his employment with MBA in December 2022, and his internal complaint was made in April or May 2024, the Court construes the reference to a two-year period to refer to a starting point sometime around May 2023, two years prior to the filing of the original complaint on May 2, 2025.

discrimination based on race, color, national origin, and disability, as well as retaliation for complaining about and opposing this conduct. *Id.*, at ¶¶ 44-46.

In his proposed amended complaint, docketed at **ECF No. 28-1**, plaintiff includes additional facts regarding his internal complaint to defendants' HR office and the EEOC Charge of Discrimination he filed. *See* **ECF No. 28-1** at ¶¶ 36, 39, 46-47, 51-54. Plaintiff clarifies that, after he lodged his verbal complaint with defendants' HR office in April or May 2024, he received a letter from them on May 29, 2024, confirming receipt of his complaint. **ECF No. 28-1** at ¶ 36. He then dates the meeting he had with the three HR officials as taking place on June 3, 2024. *Id.*, at ¶ 39. Plaintiff also provides additional facts for the timeline in that, on July 9, 2024, after his internal complaint had been rejected, he submitted a request to change his hours or schedule to avoid Mr. López. *Id.*, at ¶ 46. Then, on July 12, 2024, he alleges that certain individuals named Henry Santana and Edwin Ríos, acting on the instructions of Mr. López, filed a "fabricated" complaint against him. *Id.*, at ¶ 47. Finally, plaintiff adds that he filed his EEOC Charge of Discrimination on March 2024, which makes it timely given that the period of 300 days to file a charge, counted from the filing of the fabricated complaint on July 12, 2024, accrued by May 8, 2025. *Id.*, at ¶¶ 48, 51-52. Nonetheless, plaintiff alleges that the EEOC erroneously dismissed his Charge of Discrimination as untimely. *Id.*, at¶ 54.

**B. Defendants' motions to dismiss in light of plaintiff's proposed amendment.**

As mentioned above, requests for leave to amend a complaint before discovery is completed and prior to the filing of a motion for summary judgment are reviewed for futility

under the same standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Juárez*, 708 F.3d at 276. Futility in this context means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman*, 90 F.3d at 623. Here, the amendment directly addresses only one specific aspect of plaintiff's complaint, that of the timely exhaustion of administrative remedies.[5] The rest of the complaint remains subject to the defendants' jurisdictional and sufficiency challenges, reason for which the allowance of the amendment *per se* may not neutralize defendants' other grounds for dismissal.

In short, while plaintiff's amendment may very well *not* be futile with relation to curing certain deficiencies in his original complaint regarding exhaustion of remedies, it may still be futile for purposes of the complaint as a whole if, notwithstanding the amendment, the allegations fail to plausibly state a claim for relief. The Court therefore proceeds to evaluate whether the amendment is futile and, if not, whether the proposed amended complaint would still need to be dismissed for lack of jurisdiction or for failure to state a claim. *Amyndas Pharms., S.A.*, 48 F.4th at 40.

**1. Timely exhaustion of remedies.**

It is black-letter law that as a condition precedent to filing a suit in federal court under Title VII, a plaintiff must usually first exhaust administrative remedies. *See Franceschi v. U.S. Dep't of Veterans Affs.*, 514 F.3d 81, 85 (1st Cir. 2008); *see also Reynoso v. DeJoy*, No. CV 21-1566

[5] However, it also serves to supplement plaintiff's retaliation claim, as he now alleges that he was subjected to a "fabricated" internal complaint as a result of his own internal complaint. The Court will take this allegation into account when analyzing the sufficiency of plaintiff's Title VII's retaliation claim.

(FAB), 2023 WL 2232107, at *3 (D.P.R. Feb. 27, 2023) (citing authorities). Title VII's exhaustion requirement applies to discrimination claims under the ADA. *Bonilla v. Muebles J.J. Álvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999). "Exhaustion has two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005). The first component is meant to "provide[s] the employer with prompt notice of the claim and [creates] an opportunity for early conciliation." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996) (citing *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir. 1990)). An employee must file a charge with the EEOC within 180 days of the allegedly unlawful act, or within 300 days if the charge is filed in a so-called "deferral jurisdiction." 42 U.S.C. § 2000e-5(e)(1); *Bonilla*, 194 F.3d at 278 n.4. The second component of the exhaustion requirement comes into play when the Attorney General notifies the employee that the EEOC has dismissed his charge, starting a ninety-day clock in which the employee may then file suit. 42 U.S.C. § 2000e-5(f)(1). The exhaustion requirement is important because "in employment discrimination cases, the scope of [a [subsequently filed] civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." *Lattimore*, 99 F.3d at 464 (citation modified).

In their motions to dismiss the original complaint, defendants argued that the EEOC had dismissed plaintiff's EEOC Charge of Discrimination as untimely. **ECF No. 21** at 7-8; **ECF No. 22** at 11-12. Defendants attached to their motions the EEOC's dismissal and notice of rights letter denying plaintiff's claim. **ECF No. 21-1**; **ECF No. 22-1**. There, the EEOC's rationale for dismissing

plaintiff's claims was succinct: that the charge "was not filed within the time limits under the law; in other words, [plaintiff] waited too long after the date of the alleged discrimination to file" the charge. *Id.* No other details were provided.

Assuming that the Court may take into consideration this document at this stage,[6] defendants do not explain why the EEOC's determination of untimeliness should control in this suit. It would be odd for Congress to afford a plaintiff the right to file suit in federal court after his claim has been dismissed by the EEOC, only to then require the court to blindly follow the EEOC's decision. Title VII claims are not actions for judicial review of administrative decisions, and the Court's consideration of the merits of such claims is not tied to the EEOC's determination. *Cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 799 (1973) (". . . court actions under Title VII are de novo proceedings and . . . a Commission 'no reasonable cause' finding does not bar a lawsuit in the case.") (citation modified)). In addition, DTOP and the Commonwealth's opposition to the motion for leave to amend does not engage in a detailed analysis of the allegations of timeliness in plaintiff's proposed amendment. *See* **ECF No. 29** at 4.

Plaintiff claims that he filed a charge of discrimination with the EEOC in March 2025. **ECF No. 28-1** at ¶ 48. He alleges that this made his claims timely because it was filed "within three hundred (300) days from [sic] July 12th, 2024." *Id.* That date is the date in which he alleges that a "fabricated" complaint was filed against him on the instructions of Mr. López. *Id.*, at ¶ 47.

---

[6] The Court may, without converting a Rule 12(b)(6) motion into one for summary judgment, take into consideration "documents central to plaintiffs' claim; or documents sufficiently referred to in the complaint." *Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018) (citation modified).

Assuming that the applicable time limit for filing a charge with the EEOC is 300 days, as alleged, plaintiff's claims would be timely, and the amendment would not be futile.

However, this does not end the Court's inquiry. The Court must still determine whether, as amended, the complaint survives defendants' unopposed motions to dismiss. If any of the claims survive, regardless of whether the other claims would fail as a matter of law, then the Court would permit plaintiff to file amended complaint.

**2. Plaintiff's failure to oppose the motions to dismiss.**

Before addressing the substance of defendants' jurisdictional and sufficiency arguments for dismissal, the first issue to consider is plaintiff's failure to oppose defendants' motions to dismiss. On this point, Local Civil Rule 7 provides that the failure of a party to file a written response to a motion is deemed as a waiver to any objection that party may have had to the motion. L. Civ. R. 7(b). That rule "authorizes the presiding district judge to summarily grant the unopposed motion, at least when the result does not clearly offend equity." *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7 (1st Cir. 2002) (internal quotation marks omitted); *see also Jones v. Providence Pub. Schs.*, No. 23-1407, 2024 WL 1128034, at 1 (1st Cir. Mar. 11, 2024) (reasoning that, in order to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on procedural default, "the relevant local rule generally must impose a mandatory requirement to file an opposition and/or must warn that a plaintiff will be deemed to have waived arguments in opposition to dismissal if that plaintiff does not file an opposition…."). Indeed, "[w]here a local rule expressly requires a response to a motion, the non-moving party is placed on notice that failure to respond could

result in a procedural default." *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004) (citing *Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990)).

Plaintiff did not file an opposition by the twice-extended deadline, even though he had had a total of sixty-one days to do so. It was only after said deadline expired that he moved to amend the complaint. Plaintiff's proposed amendment, moreover, does not address any of the arguments in the motions to dismiss save for the untimeliness argument made with regard to the larger claim that he failed to exhaust administrative remedies. Accordingly, plaintiff has forfeited or waived any arguments in opposition to the non-exhaustion arguments set forth in the motions to dismiss.

**3. Title VII claims against all defendants.**

Having determined that the amendment cures the exhaustion issues raised by defendants in their motions for dismiss, and having clarified that plaintiff nonetheless waived any argument contrary to the rest of the grounds for dismissal, the Court is faced squarely with the question of whether the complaint, as amended, would still state a claim. The Court will begin with the sufficiency of plaintiff's Title VII claims, which are opposable to all defendants.[7]

---

[7] Proceeding in this matter will allow the Court to bypass the Commonwealth and DTOP's Eleventh Amendment immunity argument. *See, generally*, *Parella v. Ret. Bd. of Rhode Island Employees' Ret. Sys.*, 173 F.3d 46, 54-57 (1st Cir. 1999). If that immunity argument were successful, then all monetary claims against DTOP and the Commonwealth would have to be dismissed—*except* for Title VII. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976); *Buchanan v. Maine*, 469 F.3d 158 (1st Cir. 2006). Therefore, because the Title VII claims' survival means that the amended complaint would not be futile and that plaintiff should be allowed to amend, analyzing the Commonwealth and DTOP's immunity to other claims would be premature at this juncture.

The discussion on plaintiff's Title VII claims can be streamlined if they are understood as two related hostile work environment claims that span an overlapping period. First, plaintiff claims that defendants permitted his supervisor, Mr. López, to create this hostile work environment since about April or May 2023, which led him to filing an internal complaint with defendants' HR office in April or May 2024, and which continued and "worsened" after said complaint was dismissed in June 2024. Second, plaintiff claims that defendants' inaction allowed Mr. López to retaliate by exacerbating this hostile work environment as a response to his internal complaint. Hostile work environment claims under Title VII's anti-discrimination and anti-retaliation provisions share many aspects but ultimately have their own respective requirements under established case law. Accordingly, the Court will first address defendants' arguments as to plaintiff's substantive hostile work environment claim which spans the entirety of the relevant time period. In doing so, the Court will plow much of the legal field needed to evaluate his more discrete retaliation claim. *See Pérez-Cordero v. Wal-Mart Puerto Rico, Inc.*, 656 F.3d 19, 32 (1st Cir. 2011) ("[W]here . . . the evidence can reasonably be viewed as demonstrating either discriminatory animus or retaliatory animus, we may consider the same evidence in assessing the sufficiency of both of the plaintiff's claims.").

**a. Hostile work environment.**

Under section 703 of Title VII, "plaintiffs may establish a violation . . . by demonstrating that an employer required them to work in a hostile or abusive environment." *Franchina v. City of Providence*, 881 F.3d 32, 45 (1st Cir. 2018) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Such an environment arises when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (citation modified). A successful hostile work environment claim must show that:

> [t]he challenged conduct… be both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact did perceive it to be so. In performing this inquiry, a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

*Maldonado-Cátala v. Mun. of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017) (citation modified); *see also Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 91 (1st Cir. 2018). Moreover, "an employee claiming harassment must demonstrate that the hostile conduct was directed at him because of a characteristic protected by a federal anti-discrimination statute." *Rivera-Rivera*, 898 F.3d at 94 (quoting *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7-8 (1st Cir. 2006)). Plaintiff "need not plead facts in the complaint that establish a prima facie case, [but rather it] simply must contain facts that plausibly allege that the plaintiff experienced a discriminatory employment action." *Frith*, 38 F.4th at 271 (citation modified). Nonetheless, the elements of a prima facie case "remain relevant to [the] plausibility assessment, as those elements are part of the background against which a plausibility determination should be made." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 718 (1st Cir. 2014) (citation modified).

The examples of the mocking and humiliating comments at issue, the Court recalls, are (1) "*Pinales caca*," which translates to "Pinales feces," and which plaintiff takes to refer to his race and color; and (2) "Dominican," which plaintiff maintains is a reference to his national origin and an insinuation that he is "dumb."[8] Plaintiff does not specify either the frequency or the context for these comments, but does maintain that these were constant throughout a two-year period. The defendants argue that these allegations are insufficient to plausibly establish that Mr. López's comments rose to the level of being "severe or pervasive" so as to alter the conditions of his employment, or that they were objectively and subjectively offensive such that a reasonable person would find them to be hostile or abusive. **ECF No. 21** at 11-15; **ECF No. 22** at 15-16. MBA also argues that these comments do not by themselves demonstrate discriminatory intent. **ECF No. 21** at 15.

To start, the Court can understand how plaintiff may feel offended by being referred to by his last name in conjunction with an adjective such as *caca* or feces. That may be both objectively and subjectively offensive. The Court can further understand why plaintiff would perceive this insult as plausibly referring to his Black skin color. There is little question that, if Mr. López intended to equate feces with plaintiff's dark skin color, his comment would be discriminatory. Also, the Court can indulge plaintiff in that being referred to as "Dominican" could plausibly be understood as an (unfair) insinuation that he is "dumb," as he puts it. *See De*

---

[8] The third example, concerning plaintiff's eyeglasses, is not considered here because it does not concern racial, color-based, or national origin discrimination.

*Los Santos Rojas v. Hosp. Español De Auxilio Mutuo de Puerto Rico, Inc.*, 85 F. Supp. 3d 615, 620-21 (D.P.R. 2015) (denying summary judgment to defendant on hostile work environment claim involving evidence of "name-calling, ridicule, mockery, and insult directed at Plaintiff's Dominican accent.").[9] The Court is well aware that some people in Puerto Rico cling to an outdated and ignorant view of their island neighbors as being less educated and capable than they are. *Cf. Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense.").

As to whether these comments were part of a pattern of harassment so severe or pervasive as to alter his conditions of employment, plaintiff's few non-conclusory allegations present a close question for purposes of plausibility. The only two such allegations are that plaintiff felt compelled to file an internal complaint because of Mr. López's comments and later requested a change in his schedule to avoid him. Plaintiff does not allege to have been fired, transferred, demoted, or anything similar. Apart from that, plaintiff repeats that the was subjected to "constant comments of mockery and humiliation" for much of the span of his two-year employment as of the date of the filing of the original complaint. Plaintiff gives no other context or specificity aside from the description of the two comments. Indeed, plaintiff does not say how often he interacted with Mr. López. He does not even specify whether the comments

[9] Defendants did not address the apparent contradiction of plaintiff alleging to be Puerto Rican but at the same time claiming discrimination based on Dominican national origin. The Court speculates that plaintiff's allegation is based on his father's national origin, which may present itself in plaintiff through an expressive characteristic such as a notable accent or may be imputed to plaintiff by the harasser's knowledge of his ancestry. In any case, the Court will not address this matter as it was not raised in defendants' motions.

were made every time he and Mr. López interacted, only occasion, or sporadically. Plaintiff only alleges that the conduct was "constant." Moreover, the comments do not amount to physical threats, nor was he threatened with termination. At most, they may be considered humiliating comments, but may just as well constitute mere offensive utterances.

However thin these allegations may seem, the Court must see them in the light most favorable to plaintiff. "A well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Ocasio-Hernández*, 640 F.3d at 13 (citation modified). The bottom line is that plaintiff is not required to plead each element of his prima facie claim, *Frith*, 38 F.4th at 271, and "[a]t the motion to dismiss phase in particular, '[s]ubject to some policing at the outer bounds,' the issue of whether harassment was severe or pervasive 'is commonly one of degree -- both as to severity and pervasiveness -- to be resolved by the trier of fact.'" *Rae v. Woburn Pub. Schs.*, 113 F.4th 86, 111 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 1431 (2025) (quoting *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 474 (1st Cir. 2002)). It is not unreasonable to expect that discovery "may reveal evidence sufficient to flesh out a viable claim." *Id.*, at 111.[10] Here, after discovery, the allegations of "constant mockery and humiliation" may become a specified number of incidents that will allow the Court to properly balance the nature, frequency, and severity of Mr. López's alleged comments. The specifics behind his internal complaint, the reasons for HR's

[10] The Court is conscious that *Rae* may be read to favor dismissal when the alleged incidents of harassment do not rise to the necessary level of severity or pervasiveness. But the inquiry remains a case-specific one, and the factual allegation in *Rae* are distinct from the allegations here.

denial, and the effect that Mr. López's alleged conduct had on plaintiff's working conditions may also become apparent after the parties engage in discovery.

In sum, the Court cannot say that plaintiff's allegations, thin as they may be, do not plausibly state a claim for discriminatory hostile work environment. That is a matter better left for summary judgment or trial.

**b. Retaliatory hostile work environment.**

Section 704 of Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]" *Franchina*, 881 F.3d at 45 (quoting 42 U.S.C. § 2000e-3(a) (alterations in original)). To state a retaliation claim, the complaint "must contain plausible allegations indicating that the plaintiff opposed a practice prohibited by Title VII and suffered an adverse employment action as a result of that opposition." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 226 (1st Cir. 2012). The employee's opposition or "protected conduct" need not be a "formal" opposition, such as initiating or participating in a Title VII charge or investigation, but may also encompass "informal" opposition, such as complaining to a supervisor about conduct constituting an unlawful employment practice. *See id.*, at 45 ("Retaliation to informal opposition of a discriminatory employment activity is . . . sufficient to violate Title VII."). "As with racial discrimination claims . . . [plaintiffs] must simply allege facts that give rise to a plausible inference that retaliation occurred." *Frith*, 38 F.4th at 276-77 (citing *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014)).

The gist of plaintiff's Title VII retaliation claim is that his internal complaint about Mr. López's allegedly discriminatory conduct resulted in no action by defendants to correct the offending conduct, an increase in Mr. López's harassment, and the subsequent filing of a baseless internal complaint on the orders of Mr. López. **ECF No. 1** at ¶¶ 31-43; **ECF No. 28-1** at ¶¶ 47. MBA argues that the examples of Mr. López's comments provided by plaintiff do not reflect a discriminatory intent. **ECF No. 21** at 15. DTOP and the Commonwealth argue similarly and also contend that plaintiff does not allege that any materially adverse employment action was taken against him. **ECF No. 22** at 12-13. The Court will first address whether plaintiff plausibly alleges to have engaged in protected conduct and then whether he plausibly alleges to have suffered a materially adverse employment action.

**(i) Protected conduct.**

Protected conduct, under Title VII's anti-retaliation provision, is to "oppose[] any practice made an unlawful employment practice by [Title VII], or . . . make a charge, testif[y], assist[], or participate[] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *see also Fantini v. Salem State College*, 557 F.3d 22, 32 (1st Cir. 2009). The term "oppose" is understood to carry its ordinary meaning: "to resist or antagonize . . . to contend against; to confront; resist; withstand." *Rodríguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278 (1st Cir. 2014) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). Frequent complaints to superiors about discriminatory harassment are sufficient to demonstrate "opposition" to an unlawful employment practice under Title VII. *See*

*Pérez-Cordero*, 656 F.3d at 31 (citing *Crawford*, 555 U.S. at 276; *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 47 (1st Cir. 2010); *Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000)). Title VII does not require that the employer's complained-of conduct actually consist of an unlawful employment practice, only that the employee have a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Frith*, 38 F.4th at 277 (citation modified).

Under this standard, plaintiff's allegations that he personally complained to Mr. López about his "constant comments of mockery and humiliation" (which he contends were based in part on his race, color, and national origin) and then made a verbal and written complaint to HR (**ECF No. 1** at ¶¶ 31-41; **ECF No. 28-1** at ¶¶ 31-43), are sufficient to plausibly allege that he engaged in protected activity or conduct for purposes of Title VII. This is so even if Mr. López's comments do not ultimately amount to unlawful discrimination because plaintiff may have plausibly believed that they did. That good faith belief is enough for plaintiff to plausibly allege that his complaints about Mr. Lopez's conduct were in opposition to a practice prohibited by Title VII.

**(ii) Materially adverse employment action.**

For purposes of Title VII's anti-retaliation provision, "an action is 'materially adverse'. . . if it 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Stratton v. Bentley Univ.*, 113 F.4th 25, 42 (1st Cir. 2024) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Such actions are "not limited to discriminatory

actions that affect the terms and conditions of employment." *Id.* (quoting *Burlington*, 548 U.S at 64 (internal quotation marks omitted)).

"[E]scalation of a supervisor's harassment on the heels of an employee's complaints about the supervisor is a sufficiently adverse action to support a claim of employer retaliation." *Pérez-Cordero*, 656 F.3d at 31. "[A] hostile work environment, tolerated by the employer, is cognizable as a retaliatory adverse employment action if the harassment is sufficiently severe or pervasive." *Rae*, 113 F.4th at 101 (citation modified).

Plaintiff alleges that during his complaint process and after it was dismissed, the mockery and humiliation from Mr. López got worse (**ECF No.** 1 at ¶¶ 42-43; **ECF No. 28-1** at ¶¶ 44-45), and that he was further subjected to a "fabricated" complaint by some two individuals acting under the instruction of Mr. López (**ECF No. 28-1** at¶ 47).[11] As is the case with his substantive hostile work environment claim, plaintiff's allegations may be worryingly thin, but are nonetheless sufficient to be plausible. The Court is thus satisfied that plaintiff has plausibly alleged that he suffered an adverse employment action as a result of protected conduct.

For these reasons, the Court concludes that plaintiff's complaint, as amended, plausibly alleges violations to Title VII.

---

[11] Title VII's anti-retaliation provision calls for "but-for" causation. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020). Given the lack of specificity in his description between his alleged pre- and post-complaint harassment, the Court foresees that it may be difficult, but not impossible, for plaintiff to establish but-for causation for his Title VII retaliation claim.

## V. Conclusion

Pursuant to the foregoing analysis, the Court finds that the proposed amendment to the complaint would not be futile. Accordingly, plaintiff will be allowed to file the proposed amended complaint.

The Court therefore **GRANTS** plaintiff's motion to amend the complaint at **ECF No. 28**. Defendants' motions to dismiss at **ECF Nos. 21**, **22** are **DENIED AS MOOT**. Plaintiff shall file the proposed amended complaint as a separate docket entry within ten (10) days of the entry of this Opinion and Order. Defendants shall respond in accordance with Fed. R. Civ. P. 15(a)(3). Defendants are not precluded from reasserting by motion any defense allowable under Fed. R. Civ. P. 12(b).

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**